NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEEL PARTNERS II, L.P., : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | Civil Action No. 05-CV-1983 (DMC) |
| LOUIS V. ARONSON II, ROBERT A. : | |
| ARONSON, BARBARA L. COLLINS, : | |
| CARL L. DINGER, PAUL H. EINHORN, : | |
| ERWIN M. GANZ, I. LEO MOTIUK, | |
| DARYL K. HOLCOMB, GERARD J. | |
| QUINNAN, JUSTIN P. WALDER and | |
| SAUL H. WEISMAN, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion of Defendants Louis V. Aronson II, Robert A. Aronson, Barbara L. Collins, Paul H. Einhorn, Erwin M. Ganz, I. Leo Motiuk, Daryl K. Holcomb, Gerard J. Quinnan, Justin P. Walder and Saul H. Weisman ("Defendants") for summary judgment against Plaintiff Steel Partners II, L.P.'s ("Steel Partners").[1]  Defendant Carl Dinger ("Defendant Dinger") joined the Moving Defendants' motion for summary judgment against Plaintiff.  No oral argument was heard pursuant to Rule 78.  For the reasons set forth below, Defendants' motions are denied.

---

[1] Moving Defendants are relying upon matter outside of the pleadings in support of their requested dismissal of the First and Second Claims for Relief of the Complaint in this action, the Court will treat Defendants' motion as one for summary judgment pursuant to Fed. R. Civ. P. 56.

# I. <u>BACKGROUND</u>

Steel Partners, a Delaware limited partnership with its principal place of business in New York, is an investment fund whose principal activity is the purchase and sale of securities of publicly traded companies. (Comp. at ¶6.) It is the largest independent shareholder of Ronson Corporation ("Ronson"), a New Jersey corporation. (Comp. at ¶1.) Ronson is a publicly-traded corporation in the business, through various wholly-owned subsidiaries, of manufacturing and distributing lighters, lighter fluid, spray lubricant, and spot remover, and operating a general aviation business (including air-charter services, helicopter repair services and refueling services) at an airport in New Jersey. (Comp. at ¶15.) Steel Partners has owned shares of Ronson's outstanding common stock since 1996, and at the time of the filing of its Complaint, owned 9.6% of the Common Stock. (Comp. at ¶20.)

Defendant Louis V. Aronson, II ("Louis Aronson") is Ronson's Chief Executive Officer and also a Director, a position he has held for more than 50 years. (Comp. at ¶6.) The other Defendants, with the exception of Carl Dinger, are officers or directors of Ronson. Defendants Robert Aronson, Collins, Einhorn, Ganz, Motiuk, Quinnan, Walder, and Weisman (collectively, with Louis Aronson, the "Director Defendants") are current directors of the Company. (Comp. at ¶8.) Defendant Holcomb is Ronson's Chief Financial Officer. (Comp. at ¶11.) Defendant Dinger has a consulting agreement and an option/proxy agreement with the Company, pursuant to which he has granted the Director Defendants the power to vote all of his shares of Common Stock, approximately 506,480 shares. (Comp. at ¶13.)

In early 1998, Steel Partners filed a Schedule 13D with the Securities and Exchange Commission (the "SEC"), disclosing that it beneficially owned approximately 6.0% of all shares

then outstanding. (Comp. at ¶20.) Since filing its 13D, Steel Partners has been an outspoken critic of Louis Aronson's management. Steel Partners has publicly challenged the Board's lack of independence, its agreements with Defendant Dinger, Louis Aronson's excessive compensation, Ronson's related-party transactions with directors, the Company's excessive overhead, and the dismal financial results for the shareholders. Steel Partners currently holds approximately 9.6% of the Common Stock.

According to the allegations of the Complaint, the Defendants other than Louis Aronson, have agreed to vote the shares of Ronson owned by them as directed by Louis Aronson. (Comp. ¶¶7-9.) Steel Partners also alleges that "Defendants further agreed to purchase shares of Common Stock [or Ronson] for the purpose of obtaining, as a group, sufficient shares to give Louis Aronson undisclosed voting control." (Comp. ¶24.)

State Court History

On March 25, 2003, Steel Partners filed a Verified Complaint in New Jersey Superior Court, Chancery Division, against Louis Aronson, Ronson's Board at the time (Robert Aronson, Quinnan, Ganz, Motiuk, Weisman and Walder), and Carl Dinger. (Kint Dec. Ex. B.) The Verified Complaint alleged:

- First Claim for Relief: Injunctive relief invalidating the Shareholders Rights Agreement (the "Poison Pill") and Ronson's option and consulting agreements with defendant Dinger as breaches of the Director Defendants' fiduciary duties to Ronson's shareholders.
- Second Claims for Relief: To enjoin the original Dinger Agreements and the renewal Dinger Agreements in that they constitute a preclusive and unlawful vote-buying scheme.
- Third Claim for Relief: That the acquisition by Louis Aronson of Ronson stock since the inception of the Shareholders Rights Agreement is unlawful and a breach of fiduciary duty, and that an order should be entered directing that Aronson himself divest himself of all such stock

>
> acquired after the inception of the Shareholder Rights Agreement.
>
> - <u>Fourth Claim for Relief</u>: Director Defendants breached their fiduciary duty by "effectively transferring control of Ronson to defendant Louis Aronson without seeking to obtain the maximum price for this transfer."
> - <u>Fifth Claim for Relief</u>: Director Defendants breached their fiduciary duty and engaged in corporate waste by expending assets of Ronson in payment to Dinger under the original and renewal Dinger Consulting Agreement and Dinger Stock Option Agreement, and in payment to Louis Aronson as compensation for his services as President and CEO of Ronson.

(Haratz Dec., Ex. B.) Following the filing of the Verified Complaint, Ronson's Board formed a Special Litigation Committee ("SLC") to review and evaluate the derivative claims. The members of the SLC were I. Leo Motiuk, Esq. and Saul Weisman, both defendants in this litigation. The SLC issued a report on September 9, 2003, which concluded that no basis existed for pursuing the derivative action, and recommended to the Ronson Board that it seek dismissal of the action. The Ronson Board approved the SLC Report. The director defendants in the Chancery Court action then moved to dismiss the derivative claims based upon the SLC Report. On February 13, 2004, the Chancery Court denied that motion, finding substantial issues of fact existed. Thereafter, upon application by the Defendant Directors in the Chancery Court action, the SLC defense was bifurcated from all other claims and defenses in the action. The trial of all other claims and defenses was stayed pending trial (and determination) of the SLC defense.

The Chancery Court judge conducted a trial limited to the issue of whether the members of the SLC conducted their investigation with complete thoroughness, and whether their conclusions were reasonable or in good faith. The Chancery Court has yet to issue a decision.

-4-

Federal Court History

On May 16, 2003, Ronson and its board of directors brought suit in this Court against Steel Partners and another major shareholder, Howard Lorber, alleging violations of Section 13(d) of the Securities Exchange Act of 1934, for failure to report alleged group activity involving Ronson securities. (Kint Dec. Ex G. ¶¶47-58.) The Complaint sought declarations that Steel Partners was an Acquiring Person within the meaning of the Rights Agreement and an interested shareholder within the meaning of the New Jersey Shareholder Protection Act. (Id. ¶¶59-73.) On December 29, 2003, the District Court dismissed Ronson's Complaint on statute of limitations and jurisdictional grounds. (See Order dated December 30, 2003, Civ No. 03-2350, Hon. Garret E. Brown, U.S.D.J.) The United States Court of Appeals for the Third Circuit affirmed the District Court's dismissal. Ronson Corp., et al. v. Steel Partners II, L.P. et al., App. No. 04-1202, 2005 WL 23364 (3d Cir. 2005).

Steel Partners filed a Complaint in the instant action on April 14, 2005. In its Complaint, Steel Partners' alleges four claims for relief. Claims One and Two are claims for violations of Section 13(d), the first against the defendants as a group and the latter against Louis Aronson individually. The Third Claim for Relief, alleged against all Defendants, seeks declaratory relief and specific performance for a declaration that Defendants are an Acquiring Person under the Shareholder Rights Agreement, and specific performance of the rights-offering provisions of the Agreement. The Fourth Claim is for a declaration that Defendants as a group are an interested shareholder under the New Jersey Shareholder Protection Act.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact and it must prevail as a matter of law, or that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

### B. Steel Partners' First Claim for Relief

Steel Partners alleges in its First Claim for Relief that Defendants violated Section 13(d) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. §78m(d), and regulations promulgated thereunder, 17 C.F.R. §240.13d-1 et seq., by failing to report on a Schedule 13D their agreement to coordinate their purchases of Ronson stock for the purpose of placing absolute majority control of Ronson's shares in Louis Aronson's hands. On this claim, Steel Partners seeks to have this Court issue an order directing Defendants as a group to file a

Schedule 13D that complies with the statutory and regulatory requirements.

Defendants argue that Steel Partner's First Claim should be dismissed on statute of limitations grounds. Specifically, Defendants claim that the underlying allegations are identical to the ones alleged in Steel Partners' Chancery Court Complaint, and therefore are barred by the three year statute of limitations under the Act. Steel Partners, however, claims that it lacked notice of the elements of its 13(d) claim until March 2005, and that the underlying agreement in this action was formed sometime between 2003 and 2005.

Pursuant to Section 13(d) of the Securities Exchange Act of 1934, the owner of five percent or more of any class of a corporation's registered securities is required to file certain information with the SEC within ten days after acquiring a five percent share. Securities Exchange Act of 1934, § 13(d), 15 U.S.C.A. § 78m(d). This information includes the purchaser's identity, the number of shares purchased, the source and amount of funds used in acquiring the securities, agreements regarding further purchases, and any major changes in the issuer's operation or structure intended by the purchaser if it obtains control of the issuer. See 17 C.F.R. 240.13d-101; Hubco, Inc. v. Rappaport, 628 F.Supp. 345, 351-52 (D.N.J. 1985). The well-recognized purpose of Section 13(d) is "to provide shareholders and potential investors with information about a change in ownership and control of the issuer to enable them to make informed investment decisions." Jacobs v. Pabst Brewing Co., 549 F.Supp. 1050, 1057 (D. Del. 1982.)(citations omitted).

Although Section 13(d) does not, by its terms, create a private right of action to redress a violation, federal courts have recognized an implied private right of action for violations.

Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 62 (1975).  In determining the limitations period on claims brought pursuant to an implied right of action, the Supreme Court has directed trial courts to "look first to the statute of origin to ascertain the proper limitations period."  Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilberson, 510 U.S. 350, 359 (1991).  The Exchange Act is the statute of origin for Section 13(d).  Section 18(c) of the Exchange Act contains a limitations period of "within one year after the discovery of facts constituting the cause of action and within three years after such cause of action occurred."  15 U.S.C. § 78r(c).  However, under the Sarbanes-Oxley Act, effective July 30, 2002, Congress extended the statute of limitations for private rights of action under federal securities laws for claims of fraud, deceit, manipulation or contrivance in contravention of regulatory requirements concerning securities laws, as defined in 15 U.S.C. 78c(a)(47) to the earlier of (1) two years after discovery of the facts constituting the violation or (2) five years after such violation.  28 U.S.C. §1658(b).

 The crux of Defendants' argument is that because the triggering event of a Schedule 13(d) reporting obligation is the point in time of group formation, and because, based upon the Chancery Court pleadings, Steel Partners had knowledge of Ronson's group formation or agreements since 1998, Steel Partners is time-barred from asserting a 13(d) violation at this point.  Steel Partners, however, maintains that the agreement alleged in the instant action is a subsequent agreement and therefore the Chancery Court pleadings are irrelevant.

 From a review of the Chancery Court pleadings and memorandum presented by the parties, it is clear that Steel Partners professed knowledge of an alleged vote-buying agreement since 1998.  Steel Partners' Chancery Court Complaint, dated March 20, 2003, referenced

certain "option and consulting agreements" that it characterized as "preclusive and unlawful vote-buying scheme[s]." (Haratz Decl. ¶61.) The Complaint specifically stated that "[o]n the eve of Ronson's 1998 shareholders' meeting, the Director Defendants imposed, without seeking shareholder approval, a shareholder-rights agreement designed to prevent anyone from purchasing sufficient Common Stock to threaten Louis Aronson's control of the company." (Id. at ¶29.) The Complaint also referred to the agreements made with Defendant Dinger, alleging that they were "sham contracts, designed to stifle all shareholder dissent." (Id. at ¶54). By way of relief in the Chancery Court Complaint, Steel Partners prayed for an order invalidating Ronson's shareholder rights agreement (p. 15) the purpose of which it alleged was to "buy votes to entrench Louis Aronson and the other Director Defendants in control over Ronson." (Id. at ¶54).

Although this Court recognizes that Steel Partners alleged the existence of a vote-buying arrangement since 1998, that fact does not preclude Steel Partners from alleging the formation of a new agreement made after the SLC amendments were put into place. Steel Partners' Complaint specifically alleges that after the 2003 amendments to the Shareholder Rights or Poison Pill Agreement, the Defendants agreed to purchase shares of Common Stock for the purpose of obtaining, as a group, sufficient shares to give Louis Aronson undisclosed voting control. (Comp. ¶¶22-24.) Further, Steel Partners alleges that through purchases of Common Stock, Defendants achieved the purpose of their agreements in March 2005, by purchasing 59,000 shares of Common Stock, which were sufficient to give Louis Aronson voting control over an absolute numerical majority of Common Stock. (Comp. ¶27.)

The Court finds that the allegations alleged in the instant action are distinct from those alleged in the Chancery Court action.  Because the alleged agreement was formed sometime after September 2003, the statute of limitations set forth in the Sarbanes-Oxley Act, 28 U.S.C. 1658(b) is applicable.  Steel Partners' Complaint alleges that Ronson amended the Poison Pill Agreement in September 2003, and the purchases of stock were made in March 2005.  Therefore, the alleged undisclosed agreement was reached at some point during that time period.  As such, because the instant action was commenced in April 2005, Steel Partners' allegations are made within the applicable statute of limitations period.  Defendants' motion for summary judgment on Count One is denied.

### C. Steel Partners' Second Claim for Relief

Steel Partners' Second Claim for Relief against Louis Aronson is based on the same alleged violations as the First Claim for Relief against the Director Defendants.  For the reasons stated above, the Court finds that Steel Partners' Second Claim for relief is not barred by the requisite statute of limitations and therefore Defendants' motion on the Second Claim for Relief must be denied.

### D. Steel Partners' Third Claim for Relief

Under certain limited circumstances, a federal court may abstain from exercising its grant of jurisdiction due to overriding principles of "federalism, comity and judicial economy." Grode v. Mutual Fire, Marine & Inland Insurance Co., 8 F.3d 953, 958 (3d Cir.1993), citing Medical Malpractice Joint Underwriting Ass'n v. Pfeiffer, 832 F.2d 240, 242 (1st Cir.1987).  Abstention is "the exception, not the rule," Hawaii Housing Authority v. Midkiff, 467 U.S. 229,

236 (1984); Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1199 (3d Cir.1992), and as such, the areas in which abstention is permissible are carefully defined by the Supreme Court. See United Services Auto Ass'n v. Muir, 792 F.2d 356, 361 (3d Cir.1986).

Abstention may be permissible pursuant to the Burford, Colorado River, and Younger doctrines. Motor Club of America v. Weatherford, 841 F.Supp. 610, 619 (D.N.J. 1994). The Burford abstention, first enunciated in Burford v. Sun Oil Co., 319 U.S. 315 (1943), permits a federal court presented with basic problems of state policy pertaining to regulation of important state matters to abstain from exercising its jurisdiction when it would disrupt an important and complex state regulatory system. Id. at 619. A somewhat related doctrine, the Colorado River abstention, allows a federal court to defer to concurrent state court proceedings addressing the same issue. Id. (citing Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 815 (1976)). A third doctrine is found in Younger v. Harris, 401 U.S. 37 (1971), which permits a federal court to abstain because there is an on-going judicial proceeding regarding a vital state interest. Id at 619; see also Grode v. Mutual Fire, Marine and Inland Ins. Co., 8 F.3d 953, 960 (1993).

Here, Defendants ask this Court to dismiss Steel Partners' Third Claim for relief pursuant to the Colorado River abstention doctrine. Colorado River abstention applies in "certain extremely limited circumstances in which a federal court may defer to pending state court proceedings based on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Ryan v. Johnson, 115 F.3d 193, 195 (3d Cir.1997)(quoting Colorado River, 424 U.S. at 817). A Court

invoking the Colorado doctrine must first determine that the state and federal actions are "parallel." See id. at 196. "Generally cases are parallel when they involve the same parties and claims." Id. "It is important to note, however, that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate." In re Bankers Trust Co., 636 F.2d 37, 40 (3d Cir.1980).

  Here, the Chancery Court proceedings and the instant action undeniably involve the same parties, with addition of Defendants Collin, Einhorn and Holcomb in the federal case.  The Court, however, does not find that the claims alleged in each action support an inference that the cases are parallel.  Steel Partners' Complaint in the instant action alleges a claim that Defendants breached the Shareholders Rights Agreement, as amended, and seeks declaratory relief ordering Ronson and Louis Aronson to file a Schedule 13(d). (Comp. ¶47.)  It further alleges that Defendants are Interested Stockholders within the meaning of the New Jersey Shareholder Protection Act, N.J.S.A. § 14A:10A-1 et seq.  The Chancery Court Complaint is devoid of such allegations. As such, the Court finds that the Chancery Court action and the instant federal action seek different forms of relief.

  The mere fact that there is concurrent state and federal court proceedings "does not, without more, warrant staying exercise of federal jurisdiction." Motor Club of America v. Weatherford,  841 F.Supp. 610, 626 (D.N.J. 1994)(quoting Colorado River, 424 U.S. at 816). Steel Partners' claims in the instant action are not subject to review in the Chancery Court action, and therefore there can be no "parallel" state court litigation on the basis of which this Court could exercise Colorado River abstention.  Univ. of Md. At Baltimore v. Peat Marwick

Main & Co., 923 F.2d 265, 276 (3d Cir 1991).

In light of the above, the Court finds that the instant action and the Chancery Court proceedings are not parallel in nature, and therefore, the threshold requirement of Colorado River abstention has not been met. Thus, Colorado River abstention does not apply. Accordingly, Defendants' motion for summary judgment on Colorado River grounds must be denied.

Defendants' alternative position is that Steel Partners' Third and Fourth Claims for Relief should be dismissed for lack of subject matter jurisdiction. However, Defendants position is based on the assumption that this Court would dismiss the First and Second Claims for relief, thereby eliminating federal jurisdiction. In light of the fact that the Court has declined to dismiss the First and Second Claims for Relief, this argument is moot.

### E. Steel Partners' Fourth Claim for Relief

Defendants argue that the Court should dismiss Steel Partners' Fourth Claim for Relief on ripeness grounds. Defendants specifically contend that Steel Partners fails to allege an actual or threatened business combination under the New Jersey Shareholder Protection Act.

Pursuant to the New Jersey Shareholders Protection Act, an "interested stockholder" cannot enter into a "business combination" with a "resident domestic corporation" for a period of five years, unless the transaction was pre-approved by the board of directors of the company to be acquired before the stockholder became an interested stockholder. N.J.S.A. 14A:10A-1 et seq. The act applies to public companies such as Ronson. An "interested stockholder" is any person who "is the beneficial owner, directly or indirectly, of 10% or more of the voting power

-13-

of the outstanding voting stock of that resident domestic corporation or any subsidiary of that resident domestic corporation." A "business combination" is defined as including, but not limited to "any...sale, transfer or other disposition...to or with that interested stockholder...of assets of that resident domestic corporation." N.J.S.A. 14A:10A-3 (e)(2).

The Court finds that Steel Partners sufficiently alleges a business combination. In Paragraph 24 of the Complaint, Steel Partners alleges that the Defendants purchased shares of Common Stock for the purpose of obtaining, as a group, sufficient shares to give Louis Aronson undisclosed voting control. (Comp. ¶24.) This allegation, combined with paragraphs 57 through 60 of the Complaint, is sufficient to state a claim for relief under the New Jersey Shareholders Protection Act. N.J.S.A 14A:10A-3(e)(2), including the element of a business combination. As such, Defendants' motion for summary judgment on the Fourth Claim for Relief is denied.

### F. Defendant Dinger

Defendant Dinger ("Dinger") joined in the motion for summary judgment filed by the Director Defendants. For the reasons stated above, Defendant Dinger's motion for summary judgment on the grounds alleged by the Director Defendants is denied. However, Defendant Dinger also argues an additional basis for dismissal, namely that he has filed all required disclosures with the SEC in connection with (a) his purchases of Ronson common stock and (b) the agreements he has entered into with Ronson.

Dinger claims that in connection with his purchase of Ronson Common Stock and his Consulting Agreement and Stock Option Agreement, entered into in 1998, he has filed all

required disclosures the SEC. Dinger further claims that there is not a single transaction or event cited by Steel Partners for which he did not file the requisite disclosure with the SEC. Dinger denies that he coordinated his March 2005 stock purchase with any of his co-defendants, and that he has any agreements or understandings with any of his co-defendants concerning Ronson's common stock.

The fact that Dinger contests the fact that any agreement existed is evidence that genuine issues of material fact exist. Moreover, Dinger's mere denial of Steel Partners' allegations is insufficient to satisfy his burden under Fed R. Civ. P. 56(e). Dinger's motion is denied.

### III. CONCLUSION

For the reasons stated above, it is the finding of this Court that Defendants' motions for summary judgment are denied. An appropriate Order accompanies this Opinion.

S/   Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       April 13, 2006
Original:   Clerk's Office
Cc:         All Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File